1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Victor Fakoya et al.,

　　　　　Plaintiffs

　　　　　　　v.

County of Clark,

　　　　　Defendant

Case No.: 2:12-cv-02149-JAD-CWH

**Order Denying 12(b)(6) Motion to Dismiss [Doc. 4] and Granting in Part and Denying in Part 12(c) Motion to Dismiss [Doc. 10]**

　　This § 1983 civil-rights action arises out of multiple criminal and civil proceedings against Victor Fakoya, who was acquitted in Nevada state court of murdering a two-year-old boy whose family was living with the Fakoyas. Victor and Lola Fakoya, and their two minor daughters who sue through Lola Fakoya, bring this action against Clark County for civil-rights violations and state-law torts that they claim the District Attorney's ("DA") office and Child Protective Services ("CPS") committed in investigating and prosecuting Mr. Fakoya. Clark County seeks to dismiss the Fakoyas' claims. It argues that the DA and CPS enjoy absolute immunity because the challenged conduct is the result of discretionary, prosecutorial or quasi-prosecutorial decisions.[1]  And even if absolute immunity does not apply, the County contends, the Fakoyas' allegations are "legally unsupportable" and must be dismissed under Rule 12(b)(6).[2]  Having considered the parties' filings, their oral arguments, and the relevant law, I deny the 12(b)(6) motion to dismiss and grant in part

---

[1] Doc. 4 at 8.

[2] Doc. 10 at 3.

1   and deny in part the 12(c) motion to dismiss for the reasons below.[3]

2   **Background**

3         Victor Fakoya and his family are Nigerian immigrants.[4]  After they moved to Las Vegas,

4   they hosted another immigrant family with a two-year-old son, who died while home with Mr.

5   Fakoya.  The Nevada DA's office investigated Mr. and Mrs. Fakoya for the child's death, charged

6   Mr. Fakoya with murder, and brought no charges against his wife.  He stood trial twice in Nevada

7   state court: the first jury hung and the second acquitted him.  Mr. Fakoya spent two years in pretrial

8   detention because he could not afford to post bond.  He returned home on December 21, 2010.  Mr.

9   Fakoya was removed from his home again on December 23, 2010, and Clark County initiated

10  family-court proceedings against him on January 6, 2011, arguing under the lower civil standard that

11  his parental rights should be terminated because of the alleged murder.  A post-deprivation hearing

12  occurred the second week in January.

13        For more than five months after he was removed from his home, Mr. Fakoya was permitted

14  supervised visitation with his children, which Mrs. Fakoya oversaw.  The Fakoyas allege that

15  officials from the DA's office and CPS used coercive tactics to elicit an admission from Mr. Fakoya

16  that he murdered the two-year-old boy—and they advised Mrs. Fakoya that she must either divorce

17  her husband or lose custody of their daughters.

18        The Fakoyas believe civil proceedings were initiated against Mr. Fakoya in retaliation for his

19  acquittal and for comments on his criminal trial.  The Fakoyas also allege that the DA's office

20  opposed Mr. Fakoya's effort to seal his criminal record—a routine procedure after an acquittal.  He

21  has been permitted to return to his family, but whether the civil proceedings have concluded is

22  unclear from the complaint.

23  **Discussion**

24        Two motions to dismiss are before the court: one under Federal Rule of Civil Procedure

25  12(b)(6) for failure to state a claim on which relief can be granted and one under Rule 12(c) for

26                [3] Doc. 26.

27

28                [4] This background discussion is based on the complaint and on arguments made in the motions hearing and is not intended as any finding of fact.

1   judgement on the pleadings.[5]  I consider each motion in turn.

2   **I.      Rule 12(b)(6) Motion to Dismiss**

3       Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is

4   entitled to relief."  The purpose is to afford defendants fair notice "of what the . . . claim is and the

5   grounds upon which it rests."[6]  Defending a complaint against a Rule 12(b)(6) attack "requires more

6   than labels and conclusions"; it calls on plaintiffs to plead factual allegations "enough to raise a right

7   to relief above the speculative level."[7]  This requires a plaintiff to state claims raising a plausible

8   likelihood that the defendant engaged in misconduct for which the law—and the court—can offer

9   relief.

10      A plaintiff must state his claim with enough facts, which the court will take as true and

11  construe in the light most favorable to him, to be plausible on its face.[8]  Pleading facts "merely

12  consistent with a defendant's liability" may suggest possible legal liability.[9]  It does not rise to the

13  requisite level of plausibility.[10]  Bare and unsubstantiated allegations will not suffice; there must be

14  some substance on which the court might find defendants violating the law and thereby grant a legal

15  or equitable remedy.  Courts need not accept merely conclusory claims, unwarranted factual

16  deductions, or unreasonable inferences.[11]  Complaints are only dismissed if, beyond doubt, "the

17

18  _____

19      [5] Doc. 4; Doc. 10.

20      [6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S.
21  41, 47 (1957)) (internal quotation marks omitted).

22      [7] *Id.* (quoting 5 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1216 (3d ed. 2004)) (internal quotation marks omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 286
23  (1986)).

24      [8] *See id.* at 556, 570 (requiring complaints to raise a reasonable expectation that discovery
    will yield evidence of legal violations); *see also Zimmerman v. City of Oakland*, 255 F.3d 734, 737
    (9th Cir. 2001).

25      [9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

26      [10] *Id.*

27      [11] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (citing *Clegg v. Cult Awareness
28  Network*, 18 F.3d 752, 754–55 (9th Cir. 19984)).

1    plaintiff can prove no set of facts in support of the claim that would entitle" him to relief.[12]

2        **A.    Federal Claims: Absolute Immunity**

3        The County argues that the Fakoyas fail to allege any tortious conduct beyond the DA's

4    "activities in prosecuting and enforcing the laws within Clark County—as [it] understand[s] them."[13]

5    The defense urges that all claims arising from the DA's conduct must be dismissed because absolute

6    immunity covers prosecutorial actions.[14]  Similarly, the County argues that "CPS was involved in

7    doing the exact same actions, within their realm of authority," as the DA was, making absolute

8    immunity "co-extensive" for both municipal subdivisions.[15]

9        There is a fundamental problem with the County's argument: "municipalities have no

10   immunity from damages liability flowing from their constitutional violations."[16]  The Fakoyas sue

11   only the County, not any individual employee who may claim the benefit of prosecutorial-function

12   immunity.  In a line of cases dating back to 1978, the Supreme Court's "decisions make it quite clear

13   that, unlike various government officials, municipalities do not enjoy immunity from suit—either

14   absolute or qualified—under § 1983."[17]  Because Clark County is a municipality, any immunity that

15   its prosecutors or CPS officials may enjoy does not shield the municipal entity from suit.  The

16   _____

17       [12] *Id.* (citing *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999)).

18       [13] *See* Doc. 4 at 4.

19       [14] *Id.* at 4–6.

20       [15] Doc. 4 at 7.

21       [16] *Owen v. City of Independence, Mo.*, 445 U.S. 622, 657 (1980); *see also Nurre v.
22   Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (citing *Leatherman v. Tarrant Cnty. Narcotics
     Intelligence & Coordination*, 507 U.S. 163, 166–167 (1993); *Monell v. Dep't of Soc. Servs.*, 436
23   U.S. 658, 690, 693 (1978)) ("Because qualified immunity does not apply to municipalities, we
     would then have to determine under *Monell* whether the Everett School District is liable for acts
24   taken in furtherance of district policy by Whitehead."); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.
     1996) *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) (citing
25   *Owen*) ("Even though the Councilmembers are entitled to qualified immunity, the City may still be
     subject to municipal liability for causing a constitutional violation under 42 U.S.C. § 1983."); *Cruz
26   v. Kauai Cnty.*, 279 F.3d 1064, 1067 n.1 (9th Cir. 2002) (citing *Owen*) ("The County is not protected
     by Soong's qualified immunity.").

27       [17] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163,
     166–67 (1993) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Owen v. City of
28   Independence, Mo.*, 445 U.S. 622, 657 (1980)).

12(b)(6) motion to dismiss based on immunity is denied with respect to the Fakoyas' federal claims.

**B.    State Claims: Civil Immunity**

In its 12(b)(6) motion, the County also argues that CPS should be immune from civil liability for the Fakoyas' state-law claims under Nevada Revised Statute § 432B.160.[18]  This statute shields the person who "makes a report, conducts an interview, takes photographs, holds or places a child in protective custody, refers a case or recommends the filing of a petition pursuant to NRS 432B.380, or participates in judicial proceedings resulting from a referral or recommendation"[19] when these actions are undertaken "in good faith."[20]

On a motion to dismiss, the court must take all facts as pled to be true, however credible or incredible.[21]  Each state claim in the Fakoyas' complaint alleges that the County's departments acted in "retaliation" for Mr. Fakoya's acquittal, "with the intent" to cause harm, or "intentionally disregarding the [plaintiffs'] constitutional rights"—all factual allegations inconsistent with good faith.[22]  And in Nevada, "good faith is a question of fact."[23]  These allegations sufficiently preclude the court from applying NRS 432.160 to dismiss these claims at this stage in the litigation.

**C.    Motion Disposition**

As a municipality, Clark County can claim no immunity from the Fakoyas' federal claims. And the Fakoyas' allegations—which must be taken as true—are inconsistent with a finding of good faith to trigger NRS § 432B.160.  Accordingly, the 12(b)(6) motion to dismiss is denied in its entirety.

---

[18] Doc. 4 at 6.

[19] *Id.*

[20] Nev. Rev. Stat. § 432B.160.

[21] *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

[22] *See* Doc. 1 at 9–11.

[23] *See, e.g., Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998)  (citing *Mitchell v. Bailey & Selover, Inc.*, 605 P.2d 1138, 1139 (Nev. 1980)) (discussing good faith with respect to a manufacturer's contract); *Mitchell v. Bailey & Selover, Inc.*, 605 P.2d 1138, 1139 (Nev. 1980) (discussing good faith with respect to whether a marriage was valid).

1   **II.      Rule 12(c) Motion to Dismiss**

2          The Fakoyas assert six federal claims under 42 U.S.C. §§ 1983 and 1985: due process,

3   freedom of association, equal protection, family association, *Monell* municipal liability, and

4   conspiracy to interfere with civil rights.[24]  They also bring state claims under Nevada law: abuse of

5   process, civil conspiracy, concert of action, intentional infliction of emotional distress, and loss of

6   consortium.[25]  Clark County's Rule 12(c) motion to dismiss seeks judgment on all eleven claims.[26]

7          Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but

8   early enough not to delay trial—a party may move for judgment on the pleadings."  When a Rule

9   12(c) motion challenges a complaint for failure to state a claim, as the County does here, "a motion

10  for judgment on the pleadings faces the same test as a motion under Rule 12(b)(6)."[27]  Dismissal

11  may be granted "only if it is clear" that no set of facts consistent with the allegations could support

12  relief.[28]

13         **A.      Federal Claims**

14         To state a claim under §1983, the Fakoyas must allege that (1) the claimed misconduct was

15  committed under color of state law, and (2) the conduct deprived plaintiff of federal constitutional

16  rights.[29]  Municipalities cannot be held liable for the § 1983 violations of their employees under a

17  respondeat superior theory;[30] for a municipal entity to be liable for the violation of a constitutional

18

19          [24] Doc. 1 at 5–9; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

20          [25] Doc. 1 at 8–11.

21          [26] Doc. 10.

22          [27] *King v. Garfield Cnty. Pub. Hosp. Dist. No. 1*, 12-CV-0622-TOR, 2014 WL 1404576, at
23  *3 (E.D. Wash. Apr. 10, 2014) (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.
    1988)).

24          [28] *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (citations omitted).

25          [29] *See, e.g.*, *Ovando v. City of L.A.*, 92 F. Supp. 2d 1011, 1017 (C.D. Cal. 2000) (citing
26  *Daniels v. Williams*, 474 U.S. 327 (1986)).

27          [30] *Oklahoma City v. Tuttle*, 471 U.S. 808, 819–20 (1985) (quoting *Monell v. Dep't of Soc.
    Servs.*, 436 U.S. 658, 694–95 (1978)); *see generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658
28  (1978).

1    right, the violation must be the result of an official county policy or practice as articulated by the

2    Supreme Court in *Monell v. Department of Social Services*.  Under *Monell*, courts must "distinguish

3    acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that

4    municipal liability is limited to action for which the municipality is actually responsible."[31]  A

5    municipal entity is liable only for constitutional violations resulting from policy or custom, or the

6    acts of its official policymakers.[32]  I therefore examine the Fakoyas' federal constitutional tort claims

7    for *Monell* liability.

8                                    **1.    Claim one: due process**

9            The Fakoyas' first cause of action is for violations of substantive and procedural due

10   process.[33]  They allege that the County violated their rights in "refiling the original petition for child

11   abuse and wrongful death of the two year old without lawful justification," persisted in this conduct

12   after they "knew or should have known" of Mr. Fakoya's innocence, and employed coercive tactics

13   that would have led to false information if Mr. Fakoya had wrongly admitted to the accused

14   conduct.[34]  Whether plaintiffs include any coercive tactics against Mrs. Fakoya in this count is

15   unclear.[35]

16                              ***a.    Procedural due process***

17          Clark County argues that the Fakoyas' claim is not that Mr. Fakoya was deprived of his

18   rights without a hearing, but rather that he "had some amorphous right to not have a claim filed

19   against him at all."[36]  The defense points out that filing an action in family court is a procedure—and

20   maintains that, because Mr. Fakoya does not argue that he was denied the opportunity to be heard in

21

22   _____

23          [31] *Pembaur v. City of Cincinatti*, 475 U.S. 469, 479–80 (1986) (emphases in original).

24          [32] *Monell*, 436 U.S. at 690–91.

25          [33] Doc. 1 at 5.

26          [34] *Id.*

27          [35] *See* Doc. 1 at 5.

28          [36] Doc. 10 at 4.

1  a meaningful time or manner, the complaint fails to state a procedural-due-process violation.[37]

2  Plaintiffs rely on the Ninth Circuit's decision in *Ram v. Rubin*[38] for the proposition that "the removal

3  of children from their father's home without prior notice or hearing, where the children were not in

4  imminent danger, would violate clearly established constitutional law," and they argue the same

5  principles should have precluded Mr. Fakoya's removal from his family and their home.[39]  *Ram*

6  acknowledges a parent's "constitutionally protected right to the care and custody of his children"

7  and that a father may "not be summarily deprived of that custody without notice and a hearing,

8  except when the children [are] in imminent danger."[40]

9      The allegations in plaintiffs' complaint fail to state a procedural-due-process claim.  The

10  Fakoyas' substantive- and procedural-due-process claims are combined in a single paragraph of

11  conclusory allegations; virtually nothing is said about the procedure—or lack thereof—that preceded

12  and followed Mr. Fakoya's removal from his home.[41]  The additional allegations on which *Monell*

13  liability is predicated are similarly devoid of any reference to the hearing procedure employed here

14  or the absence thereof.[42]  Accordingly, this claim is dismissed for failure to state a procedural-due-

15  process claim.

16          **b.    *Substantive due process***

17      The County next argues that its conduct does not rise to the level of conscience-shocking

18  behavior that is required to state a viable substantive-due-process claim.[43]  The plaintiffs respond

19

20

21          [37] *Id.*

22          [38] *Ram v. Rubin*, 118 F.3d 1306 (9th Cir. 1997).

23          [39] Doc. 15 at 4-5.

24          [40] *Ram*, 118 F.3d at 1310 (citing *Perkins v. City of West Covina*, 113 F.3d 1004, 1008 (9th

25  Cir. 1997)).

26          [41]Doc. 1 at 5, ¶ 21.

27          [42] *Id.*

28          [43] Doc. 10 at 5.

1    that discovery is needed to determine the full extent of wrongful conduct here.[44]  In a substantive-

2    due-process case, the plaintiff must identify conduct "so egregious, so outrageous, that it may fairly

3    be said to shock the contemporary conscience."[45]

4         Plaintiffs have alleged a colorable substantive-due-process theory.  They allege that County

5    officials removed Mr. Fakoya from his family at Christmastime, as he returned home for the first

6    time in two years after being acquitted of murder—and did so for retaliatory purposes and not as a

7    legitimate exercise of government authority.  And they allege that County officials instructed Mrs.

8    Fakoyas that she must either divorce her husband or surrender her children.  A reasonable jury could

9    find that these actions shock the contemporary conscience.

10        And these allegations plausibly implicate a substantive-due-process right.  The test for a

11   substantive-due-process right is twofold: whether the right is "objectively, deeply rooted in this

12   Nation's history and tradition" and whether "the crucial guideposts" of "[o]ur Nation's history, legal

13   traditions, and practices" support the right.[46]  The fundamental rights recognized under substantive

14   due process include "personal decisions relating to marriage . . . family relationships, child rearing,

15   and education," which often "involv[e] the most intimate and personal choices a person may make in

16   a lifetime."  With respect to marriage, "the Constitution undoubtedly imposes constraints on the

17   State's power to control the selection of one's spouse that would not apply to regulations affecting

18   the choice of one's fellow employees."[47]  And the Supreme Court has long and specifically

19   recognized the "essential," "basic," and "precious" rights to conceive and raise children.[48]  As the

20

---

21        [44] Doc. 15 at 4.

22        [45] *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

23        [46] *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (quoting *Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977)) (citations omitted); *see also Michael H. v. Gerald D.*, 491
24   U.S. 110, 122 (1989)).

25        [47] *Id.* at 620 (citing *Loving v. Virginia*, 388 U.S. 1, 12 (1967); *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93–94 (1945)).
26

27        [48] *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399; *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942); *May v. Anderson*, 345 U.S. 528, 533 (1953))
28   (internal quotation marks omitted).; *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 619–20 (1984) ("Family relationships, by their nature, involve deep attachments and commitments to the

1   Ninth Circuit recognized in *Brittain v. Hansen*,[49] "It is long-settled that custodial parents have a

2   liberty interest in the 'companionship, care, custody, and management' of their children."  This

3   interest does not evaporate simply because they have not been model parents or have lost temporary

4   custody of their child to the state.[50]  In *Smith v. City of Fontana*,[51] the Ninth Circuit panel wrote that

5   § 1983 permits parents to challenge "a state's severance of a parent-child relationship as interfering

6   with their liberty interests in the companionship and society of their children."[52]  "This constitutional

7   interest in familial companionship and society logically extends to protect children from

8   unwarranted state interference with their relationships with their parents" because "[t]he

9   companionship and nurturing interests of parent and child in maintaining a tight familial bond are

10  reciprocal, and we see no reason to accord less constitutional value to the child-parent relationship

11  than we accord to the parent-child relationship."[53]

12          The Fakoyas allege that County officials removed Mr. Fakoya from his family at Christmas,

13  on the heels of his release from state jail, even though officials should have known he was innocent

14  of the murder charges brought against him.  DA and CPS employees then sought to sever Mr.

15  Fakoya's parental rights, arguing under the lower civil standard that he was an unfit parent because

16  he had killed a child in his home.  The authority by which officials removed an adult parent from his

17  _____

18  necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.").

19
    [49]*Brittain v. Hanse Brittain v. Hansen*, 451 F.3d 982, 992 (2006) (quoting *Stanley v. Illinois*,
20  405 U.S. 645, 651 (1972)).  *See also Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925) (citing *Meyer v. Nebraska*, 262 U.S. 390, 397 (1923)); *Moore v. City of E. Cleveland*, 431 U.S. 494, 511
21  (1977) (quoting *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639 (1974)) (internal quotation marks omitted)' (recognizing even extended family members' right to live together because "family
22  life [] is one of the liberties protected by the Due Process Clause.").

23          [50] *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).

24          [51] *See, e.g.*, *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (citing *Morrison v.*
25  *Jones*, 607 F.2d 1269 (9th Cir. 1979)); *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585–86 (6th Cir. 2013); *Silven v. Ind. Dep't of Child Servs.*, 635 F.3d 921 928–29(7th Cir. 2011); *Zakrzewski v.*
26  *Fox*, 87 F.3d 1011, 1014 (8th Cir. 1996).

27          [52] *Id.* (citing *Morrison v. Jones*, 607 F.2d 1269 (9th Cir. 1979)).

28          [53] *Id.*

1   own home—rather than removing the Fakoyas' minor daughters, as is typically done, if there was a

2   threat to the children's welfare—is presently unclear.  Yet taking the facts pled as true, it could be

3   implied that County officials interfered with Mr. Fakoya's right to oversee his daughters' care and

4   upbringing, and he thus states a plausible substantive-due-process claim.

5        Lola Fakoya has also alleged a plausible substantive-due-process claim.  She alleges that DA

6   and CPS officials used coercive tactics during the civil investigatory process when they "repeatedly"

7   told her that she had to choose either marriage to her husband or custody of her children.[54]  The

8   Fourteenth Amendment right to select one's own spouse is well-established—and, if County

9   officials were indeed forcing Mrs. Fakoya to choose between her marriage and her children, they

10  may have interfered with this right.

11       The Fakoyas have also adequately pled their substantive-due-process claim against the

12  County under a *Monell* theory by alleging a policy and custom of these rights violations.  They

13  allege that "CPS workers in general fail to conduct proper investigations into allegations of abuse"

14  before moving to deprive parents of their parental rights, and that the County is aware of the

15  violations that DA and CPS officials commit on a continuing basis.[55]  These allegations are

16  sufficient for the Fakoyas to defeat the 12(c) dismissal challenge of their substantive-due-process

17  claim.

18       **2.      Claim two: freedom of association**

19       For their second claim for relief, the Fakoyas allege a violation of their First and Fourteenth

20  Amendment freedom of association.  While First Amendment jurisprudence recognizes the intimate

21  association found in family,[56] the right to family association arises not under the First Amendment

22  but under the Fourteenth Amendment's Due Process Clause, which protects "freedom of personal

23  choice in matters of marriage and family life."[57]  This claim is subsumed within the due process

24

25       [54] Doc. 1 at 4.

26       [55] Doc. 1 at 8.

27       [56] *See Jaycees*, 468 U.S. at 619–20.

28       [57] *See, e.g.*, *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639 (1974) (citations omitted).

1    claim in count one and fails to state a separate claim under the First Amendment.  Accordingly, the

2    Fakoyas' second claim is dismissed without leave to amend.

3              **3.     Claim three: equal protection**

4              Plaintiffs' third claim is for violation of their Fourteenth Amendment right to equal

5    protection.  The factual allegations for this claim are thin: plaintiffs allege that "Victor and Lola

6    were not treated with equal protection of the law after Victor's acquittal, but were rather subjected to

7    having the law twisted and perverted against them in violation of the fourteenth amendment."[58]

8    They now add that they are black, from a foreign country, and members of a class of one, and that

9    Mrs. Fakoya was additionally treated disparately because she is female.[59]  But none of these

10   allegations is found in the complaint itself.

11             More problematic is the absence of *Monell* theory allegations necessary to state an equal

12   protection claim against the County.  The complaint is completely devoid of any fact to suggest that

13   the County has a policy, practice, or custom of the type of disparate treatment the Fakoyas intended

14   to allege here.  Accordingly, the Fakoyas have failed to state a plausible claim for a municipal

15   violation of their right to equal protection under the law.  Their third cause of action is dismissed.

16             **4.     Fourth claim: family relations**

17             The Fakoyas' fourth claim is for violation of their right to family relations.[60]  Like their

18   second claim for relief, this one is subsumed within their due-process claim in count one.[61]  As there

19   is no right to family relations separate from that recognized under the Fourteenth Amendment's

20   substantive-due-process guaranty, this claim is dismissed with prejudice.

21             **5.     Fifth claim: municipal liability**

22             Plaintiffs' fifth claim is for "violation of" § 1983 and "municipal liability."[62]  There are a

23   _____

24        [58]Doc. 1 at 6.

25        [59] Doc. 15 at 6–7.

26        [60] Doc. 1 at 7.

27        [61] *Id.* at 5, 7.

28        [62] *Id.* at 7–8.

1  number of problems with this cause of action.  First, 42 U.S.C. § 1983 provides a mechanism for the

2  private enforcement of substantive rights conferred by the Constitution and federal statutes;[63] it "is

3  not itself a source of substantive rights, but merely provides a method for vindicating federal rights

4  elsewhere conferred."[64]  Similarly, "*Monell* does not provide a separate cause of action . . . it *extends*

5  liability to a municipal organization where that organization's . . . policies or customs that it has

6  sanctioned[] led to an independent constitutional violation."[65]  Without a constitutional violation, no

7  § 1983 liability lies—under a *Monell* theory or otherwise.[66]

8         I liberally construe the allegations in this fifth "cause of action" as the *Monell*-required

9  allegations for plaintiffs' due process claims, but nothing more.[67]  Though segregated into a separate

10  claim, this set of allegations cannot stand on its own.  I dismiss this claim with leave to amend to

11  incorporate these § 1983- and *Monell*-based theories and factual allegations into plaintiffs' first

12  claim for relief.

13                 **6.**     **Sixth claim: conspiracy**

14         The Fakoyas' final federal claim is for conspiracy to interfere with their civil rights under 42

15  U.S.C. § 1985(3).[68]  Section 1985(3) is not a source of substantive rights; it merely "provides a

16  remedy for violation of the rights it designates."[69]  Conspiracy under § 1985 has four elements: "(1)

17  a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; (3) an act

18  in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or

19

20              [63] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

21
22              [64] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)) (internal quotation marks omitted).

23              [65] *Segal v. N.Y.C.*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original); *Houskins v. Sheahan*, 549 F.3d 480, 493-94 (7th Cir. 2008) (citing cases).

24
25              [66] *See id.*; *Monell v. Department of Social Svcs. of N.Y.C.*, 436 U.S. 658 (1978); *see Aguilera v. Baca*, 510 F.3d 1161, 1174 (9th Cir. 2007).

26              [67] Doc. 15 at 9 (quoting Doc. 1 at 8).

27              [68] Doc. 1 at 8–9.

28              [69] *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 370 (1979).

deprived of a right or privilege of a United States citizen."[70]  Clark County seeks to dismiss this claim, arguing that it cannot incur conspiracy liability for conspiring with its own employees.[71]  The intracorporate-conspiracy doctrine recognizes that "a corporation cannot conspire with its own employees or agents."[72]  But the Ninth Circuit "has not yet addressed whether individual members of a single governmental entity can form a 'conspiracy' within the meaning of section 1985"[73] and the other circuits are split.[74]

I need not decide whether the intracorporate-conspiracy doctrine should apply here because plaintiffs have a more fundamental problem: they have not stated an equal-protection deprivation to support a § 1985 claim.  The inclusion of the "equal protection of the laws" language in § 1985(3)[75] "was intended" by its adopters "to prevent the statute from creating a general federal criminal or tort law" and to "limit the types of actionable private conspiracies to those involving class-based animus."[76]  Thus, "the intended victims must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class," and "the class must exist independently of the defendants' actions; that is, it cannot be defined simply as the group of victims of the tortious action."[77]  Plaintiffs have not pled an equal-protection violation, and their allegations that Mr. Fakoya was subjected to these experiences "in

---

[70] *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1181 (9th Cir. 1998).

[71] Doc. 10 at 13–14.

[72] *Hoefer v. Fluor Daniel, Inc.*, 92 F. Supp. 2d 1055, 1057 (C.D. Cal. 2000) (citing *Washington v. Duty Free Shoppers*, 696 F.Supp. 1323, 1325 (N.D. Cal.1988)) (footnote omitted).

[73] *Id.* (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 910 (9th Cir.1993)) (internal quotation marks omitted).

[74] *Id.* at 1057–58 (citations omitted).  *See also Dickerson v. Alachua Cnty. Cmm'n*, 200 F.3d 761, 768–69, 769 n.9 (11th Cir.  2000); *Hoefer v. Fluor Daniel, Inc.*, 92 F. Supp. 2d 1055, 1057–58 (C.D. Cal. 2000).

[75] Along with the "equal privileges and immunities" language.  *United Broth. of Carpenters & Joiners of Amer. v. Scott*, 463 U.S. 825, 849 (1983).

[76] *United Broth. of Carpenters*, 463 U.S. at 849.

[77] *Id.* at 850.

1  retaliation of [him] being acquitted of criminal charges by a jury of his peers" suggests that this had

2  nothing to do with class-based animus.[78]  Plaintiffs' § 1985(3) claim is dismissed.

3      **B.      State Claims**

4      Having considered the Fakoyas' federal claims, I now consider the County's challenges to

5  their five state-law claims.

6          **1.      Seventh claim: abuse of process**

7      Abuse of process in Nevada has two elements: "(1) an ulterior purpose by the defendants

8  other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in

9  the regular conduct of the proceeding."[79]  It can arise from either criminal prosecutions or civil

10 proceedings.[80]  For their abuse-of-process claim, the Fakoyas allege that Clark County acted "in

11 retaliation of Victor being acquitted of criminal charges by a jury of his peers."[81]  The County

12 challenges this claim as insufficient because "the legal process had already been instituted <u>prior</u> to

13 the acquittal and was reactivated at the end of the acquittal,"[82] and the retaliation theory is

14 conclusory and unsupported by any allegation of fact.[83]  The Fakoyas respond by identifying 18

15 paragraphs of their complaint that they believe allege willful conduct for the ulterior purpose of

16 retaliation.[84]  That conduct includes the County's decision to civilly charge Mr. Fakoya after his

17 acquittal, its alleged attempt to force Mrs. Fakoya to choose between her husband and her children,

18

19

20

[78] Doc. 1 at 9, ¶ 43.

[79] *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (quoting *Posadas v. City of Reno*, 851 P.2d 438, 444–45 (Nev. 1993)) (internal quotation marks omitted).

[80] *Id.* (citing Restatement (Second) of Torts § 653 cmts. c, f & § 655 (1977); *Lewis v. Continental Airlines, Inc.*, 80 F. Supp. 2d 686, 699 (S.D. Tex. 1999); *Schroeder v. De Bertolo*, 912 F. Supp. 23, 26 (D.P.R. 1996); *Randall v. Lemke*, 726 N.E. 2d 183, 186 (2000)).

[81] Doc. 1 at 9.

[82] Doc. 10 at 16 (emphasis in original).

[83] *Id.*

[84] Doc. 15 at 11.

1 and the forced separation of the Fakoya family.[85]

2        The Fakoyas' abuse of process claim is inadequately pled.  First, what conduct they base this

3 claim on is not entirely clear: they only reference "a course and pattern of conduct with an ulterior

4 purpose other than resolving a legal dispute" and "willful" conduct "in retaliation of [Mr. Fakoya]

5 being acquitted of criminal charges by a jury of his peers."[86]  These mere labels and conclusions do

6 not raise a right to relief beyond the speculative level.[87]  Moreover, to the extent the Fakoyas base

7 their claim on the County's initiation or reinitiation of the civil proceedings against Mr. Fakoya, it

8 fails as a matter of law because merely commencing a proceeding is not an abuse of process; the

9 abuse must occur during the legal process itself.[88]  The Fakoyas' abuse-of-process claim is

10 dismissed.

11          **2.**        **Eighth claim: civil conspiracy**

12        Civil conspiracy in Nevada requires "a combination of two or more persons who, by some

13 concerted action, intend to accomplish an unlawful objective for the purpose of harming another,

14 and damage results from the act or acts."[89]  Clark County again relies on the intracorporate-

15 conspiracy doctrine and argues that this state-law claim must be dismissed because a municipality

16 cannot conspire with itself.  The Fakoyas respond that, "[w]hether or not the individual state actors

17 were acting on their own behalf for their own interests is a question of fact which will be resolved by

18 discovery" and acknowledge that summary judgment may be warranted if "discovery does not yield

19

20 _____

21      [85] *See* Doc. 1 at 3–11.

22      [86] *Id*. at 9.

23      [87] *Twombly*, 550 U.S. at 555.  At oral argument, the Fakoyas' counsel elaborated that the
24 Fakoyas believe Clark County's decision to initiate civil proceedings was retaliation for comments
that Mr. Fakoya—and his criminal attorney, Norman Reed—made about how the public-defender's
25 office handled the criminal case.  Counsel also stated that former District Attorney David Roger said
"why are you doing this?" and added that juries sometimes just get things wrong.  No facts to
support these theories are alleged in the complaint.  *See* Doc. 1.

26      [88] *Laxalt v. McClatchy*, 622 F. Supp. 737, 751–52 (D. Nev. 1985).

27
28      [89] *Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev.
1998) (quoting *Hilton Hotels v. Butch Lewis Productions*, 862 P.2d 1207, 1210 (Nev. 1993)).

1   that the individual state actors" were acting on their own.[90]

2          Whether the Nevada Supreme Court would extend this principle to departments of municipal

3   entities is unknown.[91]  But the Fakoyas have not pled this claim against individual state actors.  They

4   allege only that "CPS and the District Attorneys [sic] office acted in concert by agreement" and that

5   "the concerted efforts of CPS and the District Attorneys office" left the Fakoyas damaged.[92]  As it

6   appears that the Fakoyas acknowledge they currently have no facts to support their own civil-

7   conspiracy argument, this claim is dismissed without prejudice to its reassertion if and when

8   plaintiffs have gathered the facts to state a plausible conspiracy claim.

9               **3.      Ninth claim: concert of action**

10         Plaintiff's ninth claim for relief alleges that "CPS and the District Attorney office acted in

11  concert with one another to destroy the Fakoya household and right to familial association."[93]

12  Though related to civil conspiracy, concert of action is a separate tort.[94]  Liability for concert of

13  action may arise when "two persons commit a tort while acting in concert with one another or

14  pursuant to a common design."[95]  The acts must be "inherently dangerous or pose[] a substantial risk

15  of harm to others."[96]  Mere joint negligence is not enough.[97]  The tort is traditionally "quite narrow"

16  in application: its classic application is in the drag-racing context where one driver is the cause-in-

17  fact of the plaintiff's injury and another racer bears culpability, too.[98]  The public policy behind the

18  _____

19         [90] Doc. 15 at 12.

20         [91] *See, e.g., Collins v. Union Fed. Sav. & Loan Ass'n*, 622 P.2d 1207, 1210 (Nev. 1993) (discussing the intracorporate-conspiracy doctrine outside the civil-rights context).

21
22         [92] *Id*. at ¶ 46.

23         [93] Doc. 1 at 10, ¶ 49.

24         [94] *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 111 (Nev. 1998) (citation omitted).

25         [95] *Dow Chem.*, 970 P.2d at 111 (citing Restatement (Second) of Torts § 876).

26         [96] *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).

27         [97] *Id.* (citing Nev. Rev. Stat. § 41.141(5)(d)).

28         [98]  *Dow Chem.*, 970 P.2d at 111 (citing *Santiago v. Sherwin-Williams Co.*, 794 F.Supp. 29, 31 (D. Mass.1992)).

1    recognition of a concert-of-action tort is to "deter antisocial or dangerous behavior."[99]  As the

2    Nevada Supreme Court has indicated, concert of action "is largely confined to isolated acts of

3    [adolescents] in rural society."[100]

4          Clark County challenges the Fakoyas' concert-of-action claim as inadequately pled: it is

5    devoid of allegations of the type of inherently dangerous conduct this tort was designed to address;

6    and, as divisions of the same municipal entity, CPS and the District Attorney's office cannot legally

7    act in concert.[101]  It appears that the concert-of-action tort is a poor fit for the conduct that forms the

8    basis for the Fakoyas' claims.  Whether they could state a concert-of-action claim between legally

9    distinct defendants remains to be seen.  For now, however, they have not: the Fakoyas allege

10   conduct not by individuals but by two departments of a single municipal entity; and, more

11   importantly, the allegations lack the inherently-dangerous-tort facts necessary to state a claim under

12   this narrow legal theory.  Accordingly, claim nine is dismissed.

13                    **4.    Tenth claim: intentional infliction of emotional distress**

14         The plaintiffs' tenth claim is for intentional infliction of emotional distress.  This tort has

15   three elements in Nevada: "(1) extreme and outrageous conduct with either the intention of, or

16   reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or

17   extreme emotional distress and (3) actual or proximate causation."[102]  To be extreme and outrageous,

18   the conduct must be "outside all possible bounds of decency" and regarded as "utterly intolerable in

19   a civilized community."[103]  Clark County argues that the allegations "do not support any inference

20

21

22   ───────────────

23         [99] *Id.* (quoting *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)).

24         [100] *Dow Chem.*, 970 P.2d at 111 (quoting *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir.1983)).

25         [101] Doc. 10 at 17–18.

26         [102] *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981) (citing *Cervantes v. J. C. Penney, Inc.*, 595 P.2d 975 (Nev. 1979)).

27

28         [103] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation omitted) (internal quotation marks omitted).

1  that such emotional distress existed or that Defendant acted in an outrageous manner."[104]

2      The County is half right: plaintiffs have not alleged any emotional distress, let alone severe

3  emotional distress. The closest they get is their allegation that Mr. Fakoya "cried every night when

4  he had to leave his house after visiting his family."[105]  Their allegations of retaliation, baselessly

5  removing a father from his children, and threatening a wife with the loss of her children unless she

6  divorces her husband are plausibly outrageous and extreme.  But because plaintiffs have not alleged

7  any facts that indicate they suffered severe or extreme emotional distress, they have failed to state an

8  intentional infliction of emotional distress claim, and this claim must be dismissed.

9          **5.    Eleventh claim: loss of consortium**

10     The Fakoyas' final claim is for loss of consortium.  Nevada law recognizes that "[a]n action

11 for loss of consortium is derivative of the primary harm to the physically injured spouse (parent)."[106]

12 The County argues that the Fakoyas' loss-of-consortium claim fails because they allege no physical

13 injury for which loss-of-consortium recovery can lie.[107]  Plaintiffs do not respond to this argument in

14 their opposition.  The Fakoyas' failure to allege any physical injury prevents their recovery for loss

15 of consortium.  Accordingly, this claim is dismissed.

16          **6.    Affirmative defense: discretionary immunity**

17     Finally, Clark County raises the defense of discretionary immunity from all state claims.[108]

18 It argues that "how to best investigate a potentially dangerous condition" and how to "safely protect

19 those children until the risk of harm involving children could be evaluated in Court" are

20 discretionary functions.[109]  Plaintiffs counter that Clark County's conduct is not the kind

21

22     [104] Doc. 10 at 20.

23     [105] Doc. 1 at 1, ¶ 17.

24     [106] *Motenko v. MGM Dist., Inc.*, 921 P.2d 933, 941 (Nev. 1996), *overruled on other grounds by Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. Cnty. of Clark*, 134 P.3d

25 111 (Nev. 2006).

26     [107] Doc. 10 at 23.

27     [108] Doc. 10 at 20–21.

28     [109] *Id.* at 21.

1  discretionary immunity is intended to protect—first because it does not involve the kind of social,

2  economic, or political policy for which the doctrine is developed, and second because failure to

3  supervise and train employees is an "operational function" for which Clark County does not enjoy

4  immunity.[110]

5      NRS 41.032 shields from suit state action "[b]ased upon the exercise or performance or the

6  failure to exercise or perform a discretionary function or duty."  Because this statute mirrors the

7  Federal Tort Claims Act ("FTCA"), courts "turn[] to federal decisions to aid in formulating a

8  workable test for analyzing claims of immunity under NRS 41.032(2)."[111]  Protected acts are (1)

9  discretionary because "they involve an element of judgment or choice" and must be (2) the kind for

10  which the discretionary-function exception was intended.[112]  The focus is "on the nature of the

11  actions taken and on whether they are susceptible to policy analysis," not on whether actors "made a

12  conscious decision regarding policy considerations."[113]  But just as under the FTCA, good faith is

13  required: NRS 41.032 will not shield a state actor from tort liability for even discretionary conduct if

14  he acts in bad faith[114] because "an act of bad faith has no relationship to a rightful prerogative even if

15  the result is ostensibly within the actor's ambit of authority."[115]

16      The Fakoyas' allegations—though too thin to plead a number of their attempted claims—are

17  sufficient to prevent me from dismissing based on discretionary immunity.  The Fakoyas have

18  alleged that DA and CPS officials acted in "retaliation" for Mr. Fakoya's acquittal, "with the intent"

19  to cause harm, and while "intentionally disregarding the [plaintiffs'] constitutional rights"—all

20

21  _____

22      [110] Doc. 15 at 13–14.

23      [111] *Martinez v. Maruszczak*, 168 P.3d 720, 727 (Nev. 2007).

24      [112] *Id.* at 728 (citations omitted) (internal quotation marks omitted).

25      [113] *Id.* (citations omitted) (internal quotation marks omitted).

26      [114] *Sandoval v. Las Vegas Metro. Police Dep't*, 12-15654, 2014 WL 2936254, *at 10 (9th
Cir. July 1, 2014) (quoting *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007))

27  (discussing Nevada Revised Statute § 41.032).

28      [115] *Falline v. GNLV Corp.*, 823 P.2d 888, 892 n.3 (Nev. 1991).

1  factual allegations inconsistent with good faith.[116]  And Nevada analyzes good faith as a question of

2  fact.[117]  Accordingly, dismissal based on an application of NRS 41.032 is not currently available.

3          **C.      Motion Disposition and Leave to Amend**

4          In sum, Clark County's second motion to dismiss is granted in part and denied in part.

5  Among the dismissed claims, I deny three with prejudice and permit amendment on the remainder.

6          Courts "freely give leave [to amend] when justice so requires."[118]  The tendency of federal

7  courts is to permit new chances: the Ninth Circuit states that "[t]his policy is to be applied with

8  extreme liberality."[119]  "If the underlying facts or circumstances relied upon by a plaintiff may be a

9  proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."[120]

10         Amendment is liberally offered in federal courts, but it is not limitlessly offered.  If the

11  district court finds reasons that justify denying opportunity to amend—"such as undue delay, bad

12  faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

13  amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

14  amendment, [or] futility of amendment"—then the court has discretion to foreclose amendment.[121]

15  Here, "[t]he consideration of prejudice to the opposing party carries the greatest weight."[122]  If a

16  plaintiff repeatedly fails to cure deficiencies, after several opportunities to amend, the court may

17

18  _____

19         [116] *See* Doc. 1 at 9–11.

20         [117] *See, e.g.*, *Consol. Generator-Nevada*, 971 P.2d at 1256 (citation omitted); *Mitchell*, 605 P.2d at 1139.

21         [118] Fed. R. Civ. P. 15(a)(2); *see also Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing Fed. R. Civ. P. 15(a); *Owens v. Kaiser Found. Health*
22  *Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)) (writing that "[i]n general, a court should liberally allow a party to amend its pleading.").

23         [119] *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011)
24  (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)) (internal quotation marks omitted).

25         [120] *Forman v. Davis*, 371 U.S. 178, 182 (1962).

26         [121] *See id.*

27         [122] *Sonoma*, 708 F.3d at 1117 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d
28  1048, 1052 (9th Cir. 2003)).

1  deny further amendment unless it finds "that the allegation of other facts consistent with the

2  challenged pleading could not possibly cure the deficiency."[123]

3         Plaintiffs state a substantive-due-process claim, so this part of their first cause of action

4  survives dismissal.  Plaintiffs' freedom-of-association, family-relations, and municipal-liability

5  claims are dismissed without leave to amend because they are subsumed by the due-process claim.

6  The remaining claims are dismissed without prejudice for failure to state a claim on which relief can

7  be granted, but I do not find that amendment would be necessarily futile or otherwise inappropriate

8  as to these claims.  Leave to amend these claims is therefore granted.  Plaintiffs are reminded that

9  any substantive claims they bring against the County must include a municipal-liability

10 component.[124]  If the Fakoyas wish to amend, they have until October 31, 2014, to file an amended

11 complaint containing true factual allegations that satisfy all elements of the claims and cure the

12 deficiencies identified in this order.

13 **III.    Discovery**

14        The court previously approved the parties' oral stipulation to stay discovery until the pending

15 motions to dismiss were decided.[125]  Because this order resolves both motions, the discovery stay is

16 now lifted.

17                                    **Conclusion**

18        Accordingly, and with good cause appearing,

19        It is hereby ORDERED that Clark County's 12(b)(6) Motion to Dismiss **[Doc. 4]** is

20 **DENIED**.

21        It is further ORDERED that Clark County's 12(c) Motion to Dismiss **[Doc. 10]** is

22  **GRANTED** in part and **DENIED** in part:

23

24  _____

25        [123]*Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citing *Forman v. Davis*, 371 U.S. 178, 182–83 (1962)); *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.3d 1393, 1401 (9th Cir. 1986)) (internal quotation marks omitted).

26

27        [124] *See supra* at p. 13.

28        [125] Doc. 26.

1    The procedural-due-process part claim (claim 1) is dismissed with leave to amend.  The
2    substantive-due-process part of their first claim survives (also claim 1).

3    The freedom-of-association claim (claim 2) is dismissed without leave to amend.

4    The equal-protection claim (claim 3) is dismissed with leave to amend.

5    The family-relations claim (claim 4) is dismissed without leave to amend.

6    The municipal-liability claim (claim 5) is dismissed without leave to amend.

7    The § 1985 conspiracy claim (claim 6) is dismissed with leave to amend.

8    The abuse-of-process claim is dismissed (claim 7) with leave to amend.

9    The state civil-conspiracy claim (claim 8) is dismissed with leave to amend.

10   The intentional-infliction-of-emotional distress claim (claim 9) is dismissed with leave to
11   amend.

12   The concert-of-action claim (claim 10) is dismissed with leave to amend.

13   The loss-of-consortium claim is (claim 11) dismissed with leave to amend.

14   The Fakoyas have until Friday, October 31, 2014, to amend any claims dismissed without
15   prejudice if they can plead true facts to support the elements of the dismissed claims and cure the
16   defects identified in this order.

17   DATED October 8, 2014.

18

19

20                                                             _____
                                                               Jennifer A. Dorsey
21                                                             United States District Judge